UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

DAVID PINGATORE, et al().      :
                               :
        v.                     :   C.A. No. 11-068S
                               :
TOWN OF JOHNSTON, et al().     :

**REPORT AND RECOMMENDATION**

Lincoln D. Almond, United States Magistrate Judge

This is a collective action brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), by four employees of the Town of Johnston Fire Department on behalf of themselves and other similarly-situated employees.[1] Plaintiffs allege that the Town violated the FLSA by failing to include Longevity Pay, Hazardous Material Pay and Rescue Pay in the calculation of their regular rates of pay for purposes of overtime compensation.

Pending before me for a report and recommendation (28 U.S.C. § 636(b)(1)(B); LR Cv 72(a)) are the parties' cross-motions for partial summary judgment on the issue of liability. (Document Nos. 15 and 17). I have determined that the parties have adequately addressed their legal positions in their memoranda and that oral argument is not necessary. For the following reasons, I recommend that Plaintiffs' Motion for Partial Summary Judgment as to FLSA liability (Document No. 17) be GRANTED and the Town's Cross-Motion (Document No. 15) be DENIED.

**Facts**

The parties have presented these cross-motions to the Court on an agreed Statement of Undisputed Facts. (Document No. 16). The following basic facts are contained in that Statement.

---

[1] Plaintiffs submit a list of ninety employees who they represent have consented to become members of this collective action pursuant to 29 U.S.C. § 216(b). (Document No. 18).

Plaintiffs David Pingatore, Keith Calci, Michael Gormley, John Pistacchio and other similarly-situated members of Local 1950 of the International Association of Fire Fighters, AFL-CIO ("Local 1950"), are or were, at all relevant times, employees of the Defendants Town of Johnston and the Johnston Fire Department (collectively the "Town") within the meaning of the FLSA, 29 U.S.C. § 203(e). The Town is an employer within the meaning of the FLSA, 29 U.S.C. § 203(d), and is the official governmental authority responsible for the protection of life and property within the Town from fire and for the enforcement of all laws, ordinances and regulations relating to fire prevention, fire extinguishment and safety from fire.

In or about February 2010, Local 1950 negotiated a collective bargaining agreement ("CBA") with the Town on behalf of the full-time employees of the Fire Department, excluding the Fire Chief. The CBA covers terms and conditions of employment for the period beginning July 1, 2009 through and including June 30, 2012. Article XII of the CBA sets forth Plaintiffs' bi-weekly salary, daily pay, hourly rate and overtime hourly rate. The overtime rate is one and one-half times the hourly rate. The CBA provides that qualified employees are also entitled to Longevity Pay, Hazardous Material Pay and Rescue Pay.

Article XII, Section 3 of the CBA provides for the payment of longevity pay annually on each member's anniversary date calculated as a percentage of his or her gross income, beginning after five years of service. For purposes of Article XII, gross income is defined as base salary, holiday pay and Hazardous Material Certification stipend. Article XVII, Section 5 provides, in pertinent part, that "all employees who maintain a Hazardous Material Certification will receive an additional ten $10.00 dollars per week." Article XVII, Section 6 provides that employees "permanently assigned

or bided" to all rescue shall receive an annual stipend of five hundred ($500.00) dollars in addition to their annual salary. "This stipend will be paid on July 1 of the following year served on the rescue, prorated to reflect the length of service (in pay periods) the employee served on the rescue. All members who bid off a rescue shall revert to his/her original rank prior to him/her going into the Rescue Division."

Article VI, Section 3 of the CBA provides in pertinent part, that

> [a]ll hours worked in excess of the scheduled workday, or in excess of forty-two (42) hours per week shall be compensated for hours worked in excess of their normal work week at an overtime rate of pay as hereinafter set forth. <u>The hourly rate of overtime shall equal one and one-half (1½) times the employee's hourly rate based upon his salary divided by number of hours of his normal work week.</u>

(emphasis added).

Local 1950 and the Town of Johnston were also parties to a collective bargaining agreement covering the period July 1, 2006 through June 30, 2009. This previous CBA contains language identical to the language summarized above.

The additional pay described above (Longevity Pay, Hazardous Material Pay and/or Rescue Pay) was paid to Plaintiffs and was not included in the calculation of overtime pay provided to Plaintiffs for the period July 1, 2006 through the present.

**Standard of Review**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the pertinent evidence is such that a rational fact finder could render a verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome

of the litigation under the applicable law." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citing Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists. Nat'l Amusements, 43 F.3d at 735. Once the movant has made the requisite showing, the non-moving party may not rest merely upon the allegations or denials in its pleading, but must set forth specific facts showing that a genuine issue of material fact exists as to each issue upon which it would bear the ultimate burden of proof at trial." Okpoko v. Heinauer, No. 10-43S, 2011 WL 835598, *15 (D.R.I. March 3, 2011). The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

Cross-motions for summary judgment "simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (internal quotation marks and citation omitted). The legal standard for summary judgment is not changed when parties file cross-motions for summary judgment. Adria Int'l Group, Inc. v. Ferre Dev. Inc., 241 F.3d 103, 107 (1st Cir. 2001). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002) (internal quotation marks and citation omitted).

**Discussion**

The issue in this case is whether Plaintiffs were paid the appropriate overtime pay rate in compliance with the FLSA. Since the Town and Local 1950, Plaintiffs' lawful collective bargaining

representative, agreed to a specific overtime pay rate, and the Town paid that rate, this would appear to be a very simple dispute to resolve. However, as discussed below, any potential for simplicity goes out the window once the FLSA enters the equation.

Plaintiffs and their coworkers are represented by Local 1950.[2] The Town has recognized Local 1950 "as the sole and exclusive representative and bargaining agent for all fire fighter employees of the Johnston Fire Department excluding only the Chief of the Department, for the purpose of collective bargaining and entering into agreements relative to wages, salaries, benefits, hours and working conditions." (Document No. 15-2 at p. 5); see also R.I. Gen. Laws §§ 28-9.1-4 and 5. Pursuant to its legal duty to collectively bargain in good faith with Local 1950 (R.I. Gen. Laws § 28-9.1-6), the Town is party to a CBA with Local 1950 which memorializes detailed agreements on dozens of issues related to wages, benefits, hours and working conditions for the Town's fire fighters.

As to overtime, the CBA provides for overtime pay for all hours worked in excess of the scheduled workday or workweek. (Document No. 15-2 at pp. 17-18). It also provides that "[t]he hourly rate of overtime shall equal one and one-half (1½) times the employee's hourly rate based upon his salary divided by number of hours of his normal workweek." Id. at p. 18. If that was not clear enough, the CBA contains a detailed salary schedule in Article XII which specifies the "overtime hourly rate" by position and contract year. Id. at p. 32. In the current contract year, the overtime pay rates range from $31.22 for a probationary fire fighter to $43.74 for the Assistant

---

[2] Because Local 1950 agreed to the challenged overtime rate in the CBA, the Town filed a Third-Party Complaint against it and the R.I. State Association of Fire Fighters seeking indemnification and/or contribution in the event the Town was found liable under the FLSA. (Document No. 5). Local 1950 moved to dismiss the Third-Party Complaint. (Document No. 8). Ultimately, the Town moved for voluntary dismissal of such third-party claims and the Third-Party Complaint was dismissed with prejudice on May 10, 2011. (Document No. 9).

Chief. Id. at p. 33. The Town submitted an unrebutted affidavit indicating that those specific pay rates, including overtime, were presented by Local 1950 during contract negotiations, reviewed by the Town and agreed upon. (Document No. 15-3).

Plaintiffs do not, and could not in this venue,[3] argue that the Town breached the CBA and failed to pay the overtime pay rates agreed to in the CBA. Rather, Plaintiffs contend that the contractually-agreed overtime pay rates are understated in violation of the FLSA because certain separately-paid stipends are not included in the calculation. The Town does not directly dispute Plaintiffs' argument that the FLSA technically requires inclusion of these stipends into the overtime calculation. The Town also concedes the principle that "an employee may not waive his or her rights under the FLSA, and agree to a pay plan that violates the FLSA." (Document No. 15-1 at p. 10). Instead, the Town argues that "the employee's consent to a regular rate is a factor in determining whether the rate is bona fide" and "[t]here is no support for Plaintiffs' argument that the members of Local 1950, through contract negotiations, could not agree to a guaranteed hourly salary rate and overtime hourly salary rate and further that such negotiation and agreement could not include preclusion of Longevity Pay, a Hazardous Material Certification Stipend, and a Reserve Stipend within the calculation of the hourly salary rate." (Document No. 19 at pp. 3-4, 8). However, the Town does not provide any direct support for its argument that the parties can lawfully reach such an agreement under the FLSA.

The FLSA was enacted in 1938 during the Great Depression to protect vulnerable workers from substandard wages and oppressive working hours. See Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739 (1981) (citing 29 U.S.C. § 202(a)). The FLSA primarily meets these

---

[3] The CBA contains a mandatory grievance procedure (Article XIV) which culminates in final and binding arbitration.

objectives by establishing a uniform minimum hourly wage (29 U.S.C. § 206(a)(1)) and a standard forty-hour workweek with premium pay for additional "overtime" hours worked (29 U.S.C. § 207(a)(1)). An additional objective of the FLSA when it was enacted in 1938 was "to increase the size of the workforce, thereby spreading the work and reducing unemployment." Brooks v. Village of Ridgefield Park, 185 F.3d 130, 133 (3rd Cir. 1999). "Congress believed that requiring employers to pay an overtime premium whenever an employee worked over forty hours in a workweek would encourage employers to hire additional workers rather than pay the overtime penalty." Id.

"Calculation of the correct 'regular rate' is the linchpin of the FLSA overtime requirement" since it requires that an employee's overtime hours be paid "at a rate not less than one and one-half times the regular rate at which he is employed." O'Brien v. Town of Agawam, 350 F.3d 279, 294 (1st Cir. 2003) (quoting 29 U.S.C. § 207(a)(1)). "Regular rate" is defined by the FLSA as including "all remuneration for employment paid to, or on behalf of, the employee" subject to certain statutory exclusions. 29 U.S.C. § 207(e). The First Circuit has held that under 29 U.S.C. § 207(e) "and the relevant case law and interpretative regulations, the regular rate cannot be stipulated by the parties; instead, the rate must be discerned from what actually happens under the governing employment contract." O'Brien, 350 F.3d at 294 (citing 29 C.F.R. § 778.108 and Bay Ridge Operating Co. v. Aaron, 334 U.S. 446, 462-463 (1948)). The concept of a broadly defined "regular rate" is intended to prevent employers from circumventing the FLSA's overtime pay requirements by paying artificially low hourly pay rates and paying the balance of compensation due by other means such as bonuses and stipends. See 29 C.F.R. § 778.500 ("Since the term regular rate is to include all remuneration for employment (except statutory exclusions)..., the overtime provisions of the [FLSA]

cannot be avoided by setting an artificially low hourly rate upon which overtime pay is to be based and making up the additional compensation due to employees by other means.").

Here, Plaintiffs allege that the Town underpaid overtime under the FLSA because certain wage augments were not factored into the calculation of their regular rate. Under the CBA, the overtime hourly rate is derived solely from the agreed bi-weekly salary rate. In particular, the hourly rate is calculated by dividing the salary by the standard forty-two hour workweek, and the overtime hourly rate is one and one-half times the hourly rate. It is undisputed that the calculation of the overtime hourly rate does not, in any way, take into account the annual longevity payments required by the CBA after five years of service, the weekly stipend to compensate fire fighters who maintain Hazardous Material Certification or the prorated annual stipends paid for work on rescue vehicles. As summarized below, Plaintiffs have shown that the FLSA requires that these wage augments be included in the regular rate calculation. The Town does not counter Plaintiffs' showing as a technical matter but makes a broader argument as to its ability to agree to a "bona fide" overtime rate with Plaintiffs' union.

As previously discussed, the FLSA defines regular rate as encompassing "all remuneration" with eight specific exceptions. 29 U.S.C. § 207(e). The statutory list of exceptions is "exhaustive" and "narrowly interpreted" with the burden of showing applicability on the employer. O'Brien, 350 F.3d at 294. The exceptions are set forth in 29 U.S.C. §§ 207(e)(1)-(8). None of the exceptions apply to the Longevity Pay, Hazardous Material Pay and Rescue Pay at issue, and the Town has not attempted to establish the applicability of any of the statutory exceptions. Further, the case law is unequivocal that these payments must be included in the regular rate for FLSA purposes. See, e.g., O'Brien, 350 F.3d at 295 ("annual longevity payment is essentially a form of bonus" which must

be included in the FLSA regular rate); Featsent v. City of Youngstown, 70 F.3d 900, 904-905 (6th Cir. 1995) (hazardous duty pay and educational bonuses must be included in the FLSA regular rate); Murphy v. Town of Natick, 516 F. Supp. 2d 153, 157 (D. Mass. 2007) (educational incentive and technology bonus must be included in FLSA regular rate); Rodriguez v. City of Albuquerque, 687 F. Supp. 2d 1270, 1278 (D.N.M. 2009) (hazard pay to police officers working on certain assignments must be included in the FLSA regular rate); and Rogers v. City and County of Denver, No. 07-cv-00541-RPM, 2011 WL 1457398 at *11 (D. Colo. 2011) (hazardous duty pay must be included in the FLSA regular rate).[4]

Although the Town does not claim or show technical compliance with the FLSA, it disputes FLSA liability. The Town's argument attempts to draw a subtle distinction which is not supported by the case law interpreting the FLSA. The Town expressly concedes that "an employee may not waive his or her rights under the FLSA, and agree to a pay plan that violates the FLSA." (Document Nos. 15-1 at p. 10 and 19 at p. 8). However, at the same time, the Town contends that, by agreeing to the CBA, Plaintiffs "accepted" or "consented" to an overtime rate which does not include Longevity Pay, Hazardous Material Pay or Rescue Pay. It is difficult to see any substantive distinction between waiver and acceptance, and the Town does not offer any directly applicable case precedent in support of its argument.

Here, the Town's sole defense to FLSA liability appears to be that parties agreed in good faith to a particular overtime pay rate in the CBA and that such rate is neither "artificial or unfair." However, the case law is clear that "parties cannot contract out of the [FLSA] [and] the question of

---

[4] In Lemieux v. City of Holyoke, 740 F. Supp. 2d 246, 253 n.2 (D. Mass. 2010), the City conceded that longevity pay, HAZMAT stipend, and EMT stipend paid pursuant to CBA with fire fighters' union had to be included in the FLSA regular rate calculation as a matter of law.

contract or agreement is not relevant to whether the FLSA covers a given situation." Birdwell v. City of Gadsden, 970 F.2d 802, 806 (11th Cir. 1992); see also Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 740-741 (1981) ("congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement."). As to overtime, the First Circuit has held that the FLSA "regular rate cannot be stipulated by the parties; instead, the rate must be discerned from what actually happens under the governing employment contract." O'Brien, 350 F.3d at 294; see also Koelker v. Mayor and City Council of Cumberland, Md., 599 F. Supp. 2d 624, 631 (D. Md. 2009) (recognizing legal distinction between "contractual overtime, which is defined in the collective bargaining agreements, and statutory overtime, which is set by the FLSA"), and Berry v. County of Sonoma, 763 F. Supp. 1055, 1059 (N.D. Cal. 1991) ("It is well-settled that any custom or contract inconsistent with the FLSA is unenforceable."). The stated rationale for these holdings is generally that "[a]llowing FLSA rights to be waived by agreement would nullify one of the primary purposes for enacting the statute which was to protect certain basic employee rights from being violated by employees who are often in more powerful bargaining positions." Brooks v. Village of Ridgefield Park, 978 F. Supp. 613, 618 (D.N.J. 1997), aff'd, 195 F.3d 130 (3rd Cir. 1999).

In Wheeler v. Hampton Township, 399 F.3d 238, 240 (3rd Cir. 2005), a group of unionized police officers contended that the Township's method of calculating overtime shortchanged them under the FLSA, "even though they agreed to that method in a collective bargaining agreement." The Third Circuit agreed. As in this case, the applicable CBA overtime rate was calculated by dividing base salary by the standard working hours and multiplying by 1.5. Id. at 241. However, the Third Circuit held that, despite the existence of this contractual overtime rate, the FLSA

additionally required that payments made to the officers under the CBA for longevity pay, educational incentive pay and senior officer pay had to be included in the overtime pay calculation. Id. at 247-248 (citing Brooks v. Village of Ridgefield Park, 185 F.3d 130, 136 (3rd Cir. 1999) ("The nonwaivable nature of the provisions of the FLSA is well-settled, even if obtained by negotiations for a collective bargaining agreement.")). Thus, the fact that the Town and Local 1950 agreed to specific overtime rates in the CBA does not excuse the Town from also ensuring that overtime is paid in accordance with the FLSA.

This is an unfortunate case given the difficult fiscal situation currently facing most municipalities in this State. In their Complaint, Plaintiffs seek a monetary award of the amount of unpaid overtime due under the FLSA since January 1, 2007, an additional award of liquidated or double damages,[5] and statutory attorney's fees and costs. (Document No. 1 at p. 5). Presumably, since the Town agreed to a specific overtime pay rate with Local 1950, it did not anticipate or originally budget for these potential expenses. It is also arguably short-sighted of Plaintiffs to pursue this action since the current CBA expires on June 30, 2012 and the parties will soon be back to the bargaining table negotiating over limited resources in an uncertain economic environment.

It is also an unfortunate case because, although Plaintiffs have established a technical FLSA violation, the actions of the Town do not implicate any of the fundamental purposes behind the FLSA's protections. This is not a case where an overbearing employer is seeking to take advantage

---

[5] Such damages are awarded unless the Town shows that it acted "in good faith" and with "reasonable grounds for believing" that its act or omission was not an FLSA violation. See 29 U.S.C. §§ 216(b) and 260. Although the issue of liquidated damages is not presently before the Court and requires a factual examination of the totality of circumstances, the Court notes the existence of case law support for the proposition that liquidated damages are not appropriate where an employer is found liable under the FLSA for an erroneous regular rate calculation and such calculation was collectively bargained in good faith with the employers' union representative. See, e.g., Rudy v. City of Lowell, 777 F. Supp. 2d 255, 262-264 (D. Mass. 2011).

of vulnerable workers.[6] Plaintiffs are represented by a local affiliate of an international union which focuses its representation on public sector fire and emergency personnel and is well aware of the FLSA and its applicability to its Members. The Town and Local 1950 agreed to a mechanism for overtime pay in Article VI, Section 3 of the CBA and a specific overtime hourly rate in Article XII, Section 1, for each position and for each contract year. There is no suggestion on this record that either the Town or Local 1950 intentionally understated the agreed overtime rate in an effort to evade the FLSA's requirements. There is also no suggestion on this record that the Town's intent was to negotiate an artificially low base hourly rate and improperly shift compensation to non-hourly paid stipends to reduce FLSA overtime cost. However, at the same time, it is clear and undisputable that the Town violated the FLSA by failing to include Longevity Pay, Hazardous Material Pay and Rescue Pay in the calculation of the "regular rate" for purposes of overtime pay. Thus, it is liable for an FLSA violation.

**Conclusion**

For the foregoing reasons, I recommend that Plaintiffs' Motion for Partial Summary Judgment as to FLSA liability (Document No. 17) be GRANTED and the Town's Cross-Motion (Document No. 15) be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt. See Fed. R. Civ. P. 72(b); LR Cv 72.

---

[6] The FLSA dates back to 1938 and is long overdue for a comprehensive review and modernization. While the FLSA's fundamental protections are important and should be maintained, the complexities of the law make compliance challenging for even the most well-intentioned employers. Further, much of today's FLSA litigation is a "gotcha" game aimed at unearthing technical violations which become financially material when spread across larger workforces. It is less common today to see FLSA cases brought on behalf of vulnerable low-wage earners facing minimum wage and/or overtime abuses. Congress should overhaul the FLSA to focus its protections on those most vulnerable in the workforce, and simplify and clarify the rules so employers do not unnecessarily waste resources on compliance and the defense of technical violations.

Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision. See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
October 28, 2011